IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION



**FILED**

JUN 28 2016

Clerk, U S. District Court
District Of Montana
Missoula

ROBERT MYERS,

Plaintiff,

vs.

SHAUN R. THOMPSON, in his
official capacity as Chief Disciplinary
Counsel for the State of Montana,

Defendant.

CV 16–45–H–DWM–JCL

OPINION
and ORDER

Attorney Robert Myers ("Myers") seeks declaratory and injunctive relief in

this case. He argues that certain professional rules of conduct that prohibit false

statements violate the Free Speech Clause of the First Amendment and the Equal

Protection Clause of the Fourteenth Amendment. (Docs. 1, 11.) The narrow

prohibition concerns any false statements by and about judicial candidates.

Myers seeks to enjoin the Office of Disciplinary Counsel from enforcing Canon

4.1(A)(10) of the Montana Code of Judicial Conduct and Rule 8.2(a) of the

Montana Rules of Professional Conduct on the grounds that he is currently a

candidate for district judge in Ravalli County and his ability to effectively

campaign "has been stymied by being threatened with discipline for broadcasting a

1

truthful advertisement about his opponent, Judge Jeffrey Langton." (Doc. 5 at 2.) The defendant filed a motion to dismiss Myers's as-applied challenges for lack of standing and ripeness and to dismiss Myers's complaint under the *Younger*[1] doctrine. (Doc. 13.) A hearing on the motions took place on June 22, 2016. Each of the motions is denied.

## BACKGROUND

The Montana Supreme Court established the Office of Disciplinary Counsel ("ODC") for the purpose of enforcing professional conduct by Montana-licensed attorneys. ODC processes, investigates, and prosecutes complaints filed against Montana attorneys. The Commission on Practice hears and decides complaints filed by ODC and makes recommendations to the Montana Supreme Court for disciplining attorneys. The Supreme Court considers such recommendations, issues a written decision, and imposes whatever discipline, if any, it deems appropriate. Defendant Shaun Thompson currently serves as Chief Disciplinary Counsel for ODC.

On March 15, 2016, Myers filed a C-1 "Statement of Candidacy" with the Commissioner of Political Practices so that he could run for the position of District Judge for the Twenty-First Judicial District of Montana, Department 1. That

---

[1] *Younger v. Harris*, 401 U.S. 37, 43-45 (1971).

position is currently held by his incumbent opponent, Judge Jeffrey Langton. As

part of Myers's campaign, Myers caused to be broadcast a campaign

advertisement critical of Judge Langton's handling of a child custody matter

involving one of Myers's clients, Dan Cox. The advertisement was narrated by

Cox and stated:

> This is Dan Cox and I have a warning for you. I caught Judge Jeff
> Langton committing fraud on the court. He was secretly communicating
> with attorneys for the other party. He denied me a chance to respond and
> prevented me from fully presenting my case. Robert Myers was the only
> attorney who helped me stand up to this corruption. All I was asking for
> was a new judge to determine how his conduct affected my ability to
> have a fair hearing. Not only did Jeff Langton not allow a neutral judge
> to look at his conduct, but he stopped all witnesses including himself
> from being questioned. He of course found himself innocent without a
> hearing. No judge should judge his own conduct. Shame on Jeff
> Langton for retaliating against my lawyer, and shame on Jeff Langton for
> not giving me and my children a fair hearing. Paid for by Myers for
> Judge.

(Amend. Compl., Doc. 11 at ¶ 29.) The advertisement was broadcast several times

from late April 2016 through late May 2016 on KGVO, a radio station in Missoula

whose broadcasts can be received in Ravalli County. The advertisement makes

multiple factual assertions that are of questionable veracity. Many of the

assertions have previously been rejected by the Montana Supreme Court. *See Cox*

*v. Cox*, 348 P.3d 673 (Mont. 2015) (table); *Myers v. Twenty-First Jud. Dist. of*

*Mont.*, 353 P.3d 506 (Mont. 2015) (table).

3

On May 27, 2016, ODC's Deputy Disciplinary Counsel Jon Moog sent an email to Myers with an investigative letter attached to it. The letter stated that ODC "has initiated an investigation into [Myers's] advertising campaign for election to District Court Judge for Ravalli County, for potential violations of Rule 8.2 [of the Montana Rules of Professional Conduct], and Canon 4 of the Montana Code of Judicial Conduct." (Ex. 1, Doc. 11-1.) The letter also directed Myers to provide "digital copies of all published campaign materials, whether written, video, or audio, including all television or radio advertisements, with written transcripts, aired by [his] campaign" as well as "invoices and publishing contracts related to all advertising materials, including the publishing date and frequency of all materials." (*Id.*) Myers was further told to produce "any internet/social network posting" by him, his campaign, or affiliated campaign committees/groups. (*Id.*) Counsel for Myers faxed a letter to ODC later that day requesting a copy of the complaint as well as a list of regulations he was suspected of violating. (Ex. 3, Doc. 11-3 at 2.) Moog responded that same day that ODC had not received a written complaint but instead "just a transcript of [Myers's] radio advertisement narrated by Mr. Cox and sent by Judge Langton's law clerk." (Ex. 4, Doc. 11-4). When further inquiry was made as to what provisions of Canon 4 Myers allegedly violated, (Ex. 5, Doc. 11-5), Moog responded that "the investigation just began, so

I'm not sure what rules might be implicated, but Rules 4.1(A)(10) and 4.2(A)(3) look applicable," (Ex. 6, Doc. 11-6).

Rule 8.2(a) of the Montana Rules of Professional Conduct states, "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office." Subsection (b) of that rule further provides that "[a] lawyer who is a candidate for judicial office shall comply with the applicable provisions of the code of judicial conduct," implicating Canon 4 of the Montana Code of Judicial Conduct. Rule 4.1(A)(10) states, "[a] judge or a judicial candidate shall not . . . knowingly or with reckless disregard for the truth, make any false or misleading statement." Rule 4.2(A)(3) states, "A judicial candidate shall . . . review and approve the content of all campaign statements and materials produced by the candidate or his or her campaign committee . . . before their dissemination."

On June 6, 2016, Myers filed this lawsuit challenging the constitutionality of Rule 8.2(a) and Rule 4.1(A)(10). He does not challenge Rule 4.2(A)(3), asserting that he reviewed and approved the radio advertisement and stands by it. Following the filing of this case, Myers received an email from ODC stating:

> Your federal lawsuit notwithstanding, Mr. Myers' response is still due as directed, absent an injunction. Your client is free to run any advertising he wishes, but there will be consequences for untruthful(or reckless disregard for the truth) advertisements in violation of the Rules, which will withstand constitutional scrutiny.

(Ex. 8, Doc. 11-8.) Myers wants to continue broadcasting the radio advertisement discussed above. He claims he will not do so, however, so long as he faces a threat of prosecution by ODC and subsequent discipline. Indeed, at oral argument he claimed the Canons kept him from saying anything critical of the incumbent judge.

## ANALYSIS

The State argues Myers lacks standing to bring his as-applied challenges because he has not suffered an injury in fact and because his challenges are not ripe in the absence of an ODC complaint. Contrary to the defendant's position, Myers faces a credible threat of prosecution if he continues to broadcast an ad that is conceivably false in several respects. And, there is a substantial controversy between him and ODC. Even so, after listening to arguments and reading the briefs, Myers is unlikely to succeed on the merits of his claims. For that reason alone, preliminary injunctive relief is unwarranted.

## I. Motion to Dismiss As-Applied Challenges

The proceedings before ODC are at a preliminary investigative stage, and a

6

complaint has not been filed. (*See* Doc. 11-4 ("We did not receive a written grievance. . . ."); Doc. 11-6 ("The investigation just began. . . .").) As a result, the defendant argues that Myers has not suffered an "injury in fact," a necessary element of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To establish "injury in fact," a plaintiff must show a harm that is "concrete and particularized" as well as "actual or imminent" rather than "conjectural or hypothetical." *Id.* at 560. In a First Amendment case, a plaintiff can establish injury in fact by showing that the threat of an enforcement action against his speech is sufficiently imminent. *Susan B. Anthony List v. Driehaus*, ___ U.S. ___, 134 S. Ct. 2334, 2342 (2014). "[A] plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* (quoting *Babbitt v. Farm Workers,* 442 U.S. 289 (1979)). In *Babbitt*, the Court concluded the plaintiffs' fear of prosecution was not "imaginary or wholly speculative" when they challenged a law that proscribed dishonest, untruthful and deceptive publicity, the plaintiffs had actively engaged in consumer publicity campaigns in the past, and they alleged an intention to do so in the future. 442 U.S. at 301-02; *see also Susan B. Anthony List*, 134 S. Ct. at 2343-44.

7

Here, Myers has alleged "an intention to engage in a course of conduct arguably affected with a constitutional interest." *Babbitt*, 442 U.S. at 298. Myers states that he "desires to again broadcast the radio advertisement" and intends to run for office again in the future even if he is unsuccessful this election cycle. (Doc. 11 at ¶¶ 40, 43.) Myers's intended future conduct is "arguably . . . proscribed by [the rules]" he wishes to challenge, *Babbitt*, 422 U.S. at 298, because Montana's false statement provisions cover the subject matter of his speech. While Myers presents no evidence of a history of past enforcement of these particular provisions, *see Susan B. Anthony List*, 134 S. Ct. at 2345; *Winter v. Wolnitzek*, ___ F. Supp. 3d ___, 2016 WL 2864418, at *6 (E.D. Ky. May 13, 2016) (finding a credible threat of prosecution where plaintiff provided specific evidence that the canon at issue had been enforced in the past against someone engaged in similar behavior), he did receive an email from ODC clearly stating that "there will be consequences for untruthful (or reckless disregard for the truth) advertisements in violation of the Rules, which will withstand constitutional scrutiny," (Ex. 8, Doc. 11-8). Myers faces a sufficiently credible threat of prosecution as to have standing.

The defendant next argues that Myers's as-applied challenges are not ripe because ODC is still investigating and has not made any disciplinary decisions.

Whether a constitutional declaratory judgment is ripe depends on whether the alleged facts, in a totality of the circumstances, "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *United States v. Braren*, 338 F.3d 971, 975 (9th Cir. 2003). In *Winter*, the district court determined that a plaintiff's claim was not ripe where the disciplinary authority sent her a letter informing her of a complaint filed against her but disciplinary action had yet to occur. 2016 WL 2864418, at \*\*18-19. The court determined that the plaintiff's as-applied challenge "depends on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* at \*19 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). The procedural posture of this case is distinguishable. In *Winter*, the plaintiff had already run the relevant advertisements and the election was over by the time she received notice of the complaint. *Id.* at \*2. At that point, the only remaining dispute between the parties was a post hoc ruling on the propriety of her earlier actions. Here, Myers wants to engage in conduct he believes will lead to disciplinary action by ODC, bolstered by knowing ODC is actively investigating him. ODC ordered Myers to turn over personal and campaign material. (*See* Doc. 11-1.) It sent him a cautionary email regarding his decision to air the subject ad going forward. (Doc. 11-8.) A

9

troubling conundrum exists if ODC can actively investigate Myers and threaten

him with prosecution but at the same time avoid judicial review of the

constitutionality of the rules it seeks to enforce. Additionally, the "fitness" and

"hardship" requirements of standing are met because the factual record is

sufficiently developed and Myers will suffer a hardship if this matter were not

heard due to the timing of the case in an election year. *See Susan B. Anthony List*,

134 S. Ct. at 2347. Accordingly, the defendant's motion to dismiss Myers's as-

applied challenges for lack of standing and ripeness is denied.

## II.  Abstention under *Younger*

The *Younger* doctrine instructs federal courts to abstain from granting

injunctive or declaratory relief when such relief would interfere with pending State

or local proceedings. *Younger v. Harris*, 401 U.S. 37, 43-45 (1971); *Gilbertson v.

Albright*, 381 F.3d 965, 98 (9th Cir. 2004). However, the Supreme Court has since

cautioned that a federal court's obligation to hear and decide a case is "virtually

unflagging," and that "[p]arallel state-court proceedings do not detract from that

obligation." *Sprint Comms., Inc. v. Jacobs*, ___ U.S. ___, 134 S. Ct. 584, 591

(2013) (internal quotation marks omitted). In light of the *Sprint* decision, the

Ninth Circuit holds that *Younger* abstention in civil cases "is appropriate only

when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement

actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *ReadyLink Healthcare, Inc. v. St. Compensation Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014). Only if those threshold requirements are met should courts consider whether a federal action would have the practical effect of enjoining the state court action. *Id.*

Like *ReadyLink*, this case does not involve a parallel criminal proceeding and there is no state order or judgment to be enforced. While a proceeding before the ODC has the potential to be "akin to criminal proceedings," *id.*, ODC's investigation into this case has not progressed beyond the investigation stage. Other courts have determined that investigation proceedings, without more, do not trigger *Younger. Compare Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 817 (7th Cir. 2014) (holding state investigatory proceedings before a board that lacked prosecutorial authority were at too preliminary a stage to warrant federal deference), *and Telco Commns., Inc. v. Carbaugh*, 885 F.2d 1225, 1228-29 (4th Cir. 1989) (no abstention where agency notified plaintiff of specific charges and held informal meeting, but investigation was still unfolding), *with Middlesex Cnty. Ethics Comm. v. Garden St. Bar Ass'n*, 457 U.S. 423, 434 (1982) (holding abstention appropriate where disciplinary authority had filed formal charges

against the plaintiff). For the reasons made clear in *Sprint* and *ReadyLink*, abstention is not appropriate here, and the defendant's motion to dismiss on this basis is denied.

## III. Preliminary Injunction

A preliminary injunction is an extraordinary remedy never awarded as a matter of right. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The burden is on the party seeking the injunction to satisfy the *Winter* elements. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011). But, "in the First Amendment context, [on the merits prong], the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Id.* at 1116. This is because the government always bears the ultimate burden of justifying its restrictions on speech. *Id.*

Myers's verified complaint is treated as an affidavit, and thus may be used as evidence to support an injunction. *Id.* Myers brings both facial and as-applied

constitutional challenges to Rule 8.2(a) of the Montana Rules of Professional Conduct and Rule 4.1(A)(10) of the Montana Code of Judicial Conduct. Rule 8.2(a) prohibits attorneys from making false statements, or speaking with reckless disregard as to the truth or falsity of such statements, concerning the qualifications or integrity of a judge or judicial candidate. Rule 4.1(A)(10) prohibits judicial candidates from making false or misleading statements generally. If Myers violates these provisions by airing his advertisement, he may be subject to discipline through the ODC, the Commission on Practice, and the Montana Supreme Court, but only if the ad is demonstrably false in its factual assertions.

Myers insists the rules infringe his right to free speech under the First Amendment. He is correct so far as making false statements that undermine the integrity of the judiciary. "Judicial candidates have a First Amendment right to speak in support of their campaigns." *Williams-Yulee v. Fla. Bar*, ___ U.S. ___, 135 S. Ct. 1656, 1673 (2015); *Republican Party of Minn. v. White*, 536 U.S. 785, 788 (2002); *see also Gentile v. St. Bar of Nev.*, 501 U.S. 1030, 1054 (1991) ("[D]isciplinary rules governing the legal profession cannot punish activity protected by the First Amendment, and that First Amendment protection survives even when the attorney violates a disciplinary rule he swore to obey when admitted to the practice of law."). And, false statements are subject to First

13

Amendment protection. *United States v. Alvarez,* ___ U.S. ___, 132 S. Ct. 2537, 2550 (2012) (plurality). Rule 8.2(a) and Rule 4.1(A)(10) restrict Myers's speech on the basis of its content by prohibiting him, as a lawyer and judicial candidate, from knowingly making false or misleading statements. According to Myers's verified complaint, he would air his advertisement that is critical of Judge Langton but he does not for fear of disciplinary action pursuant to these Rules. As such, Myers makes a colorable claim that his First Amendment rights have been infringed, and the burden shifts to the defendant to justify the restrictions on his speech. *Thalheimer,* 645 F.3d at 1116.

"A State may restrict the speech of a judicial candidate only if the restriction is narrowly tailored to serve a compelling interest." *Williams-Yulee,* 135 S. Ct. at 1665. "'[I]t is a rare case' in which a State demonstrates that a speech restriction is narrowly tailored to serve a compelling interest." *Id.* at 1665-66 (quoting *Burson v. Freeman,* 504 U.S. 191, 211 (1992) (plurality opinion)). That said, the provision at issue need only be narrowly tailored, not "perfectly tailored." *Id.* at 1671. "The impossibility of perfectly tailoring is especially apparent when the State's compelling interest is as intangible as public confidence in the integrity of the judiciary." *Id.* Here, the defendant has met its burden, showing both that the State has a compelling interest in regulating false and/or misleading speech by

14

lawyers and judicial candidates and that the State's regulations are narrowly tailored to meet that goal.

## A. Compelling Interest

According to the defendant, the State has an interest in "preserving and promoting the appearance and actuality of an impartial open-minded judiciary, and maintaining safeguards against campaign abuses that imperil public confidence in the judiciary." (Doc. 12 at 15.) The Supreme Court recognizes the "vital state interest" in safeguarding "public confidence in the fairness and integrity of the nation's elected judges." *Williams-Yulee*, 135 S. Ct. at 1666 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 889 (2009) (internal quotation marks omitted)). As explained by the Court,

> The importance of public confidence in the integrity of judges stems from the place of the judiciary in the government. Unlike the executive or the legislature, the judiciary "has no influence over either the sword or the purse; . . . neither force nor will but merely judgment." The Federalist No. 78, p. 465 (C. Rossiter ed. 1961) (A. Hamilton) (capitalization altered). The judiciary's authority therefore depends in large measure on the public's willingness to respect and follow its decisions. As Justice Frankfurter once put it for the Court, "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954). It follows that public perception of judicial integrity is "a state interest of the highest order." *Caperton*, 556 U.S. at 889 (quoting [*White*, 536 U.S. at 793] (Kennedy, J., concurring)).

*Id.* Accordingly, states may regulate judicial elections differently than political

15

elections "because the role of judges differs from the role of politicians." *Id.* at 1667. Myers acknowledges that judicial integrity and the appearance of judicial integrity are compelling state interests. (Doc. 6 at 14.) He argues, however, that the State's rules are not narrowly tailored to meet those interests.

## B. Narrowly Tailored

"A narrowly tailored regulation is one that actually advances the state's interest (is necessary), does not sweep too broadly (is not overinclusive), does not leave significant influences bearing on the interest unregulated (is not underinclusive), and could be replaced by no other regulation that could advance the interest as well with less infringement of speech (is the least-restrictive alternative)." *Republican Party of Minn. v. White*, 416 F.3d 738, 751 (8th Cir. 2005). "The First Amendment requires that the Government's chosen restriction on the speech at issue be 'actually necessary' to achieve its interest." *Alvarez*, 132 S. Ct. at 2549. "There must be a direct causal link between the restriction imposed and the injury to be prevented." *Id.*

Here, the defendant makes a strong showing that the rules are necessary to achieve the State's interest in ensuring public confidence in the integrity of the judiciary. The State has chosen to target the conduct it believes most likely to erode that confidence: false and misleading statements by those entrusted by the

16

States to carry out the law, the lawyers, judicial candidates, and judges. In doing so, the State's actions are consistent with both the principles underlying *Williams-Yulee* and the professional standards in the legal practice. *See U.S. Dist. Ct. for E. Dist. of Wash. v. Sandlin*, 12 F.3d 861, 866 (9th Cir. 1993) ("[O]nce a lawyer is admitted to the bar, although he does not surrender his freedom of expression, he must temper his criticisms in accordance with professional standards of conduct."). Myers insists that the Supreme Court's decision in *Williams-Yulee* is inapplicable here because that decision was limited to the factual circumstances of rules governing personal solicitation by judicial candidates. However, the Ninth Circuit specifically rejected such a limited factual interpretation in *Wolfson v. Concannon*, where the court applied the underlying principles of *Williams-Yulee* to other judicial election provisions. 811 F.3d 1176 (9th Cir. 2016) (addressing rules prohibiting judicial candidates from soliciting funds for other candidates or publicly endorsing other candidates). Accordingly, the principles enunciated in *Williams-Yulee* apply to this case, undermining Myers's reliance on cases discussing speech in the political campaign context, *see 281 Care Comm. v. Arenson*, 766 F.3d 774, 793 (8th Cir. 2014) (striking down Ohio's prohibition on false campaign speech), and rendering unpersuasive Myers's arguments as to a less restrictive alternative, overbreadth, and underinclusiveness.

17

### 1. Least Restrictive Alternative

For a rule limiting speech to be narrowly tailored, it "must be the least restrictive means of achieving a compelling state interest." *McCullen v. Coakley*, ___ U.S. ___, 134 S. Ct. 2518, 2530 (2014). Myers argues counterspeech is a less restrictive alternative than regulations that suppress false or misleading speech, relying on the Supreme Court decision in *Alvarez*. In *Alvarez*, the Supreme Court addressed counterspeech in the context of a First Amendment challenge to the Stolen Valor Act, explaining "[t]he remedy for speech that is false is speech that is true. This is the ordinary course in a free society. The response to the unreasoned is the rational; to the uninformed, the enlightened; to the straightout lie, the simple truth. . . . The First Amendment itself ensures the right to respond to speech we do not like, and for good reason." 132 S. Ct. at 2550. While counterspeech may be a strong alternative in the political election context, the rationale advanced by Myers does not work to enhance the compelling State interest in judicial elections at issue here.

Rule 8.2(a) and Rule 4.1(A)(10) are not meant to protect individual judges or judicial candidates from scrutiny and criticism. Rather, the rules expressly limit false and misleading statements on the grounds that the public confidence in the *system*, not the individual judge, erodes when false statements are made in judicial

races or by judicial candidates. *See Standing Comm. on Discipline of U.S. Ct. For Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1437-38 (9th Cir. 1995) (noting that while attorneys play an important role in exposing problems with the judicial system, "*false* statements impugning the integrity of a judge erode public confidence without serving to publicize problems that justifiably deserve attention"). As a result, counterspeech is not an effective means to achieve the State's compelling interest in enhancing public confidence in the integrity of the judicial system. Counterspeech is the best argument to explore falsehoods in speech about ideas and beliefs. Counterspeech is the cure to hate speech, to subversive speech, or to disagreeable political ideas or policies. Counterspeech is not a remedy to a systemic challenge that is false and undermines the public's confidence in the third branch of government.

## 2. Overbreadth

Myers claims that Canon 4.1(A)(10) is substantially overbroad because it applies without regard to subject matter and applies to any setting, including private conversations. While Myers's argument has some merit when considering the language of the canon in a vacuum, overbreadth is "judged in relation to the statute's plainly legitimate sweep." *Wolfson*, 811 F.3d at 1184 (quoting *Wash. St. Grange v. Wash. St. Republican Party*, 552 U.S. 442, 449 n.6 (2008)). In

*Williams-Yulee*, the plaintiff argued that the Florida law that prevented judges

from personally soliciting funds was overbroad because it included a prohibition

of solicitation through mass mailings, which arguably have a lesser impact on the

public confidence in the judiciary than personal solicitation. 135 S. Ct at 1670-71.

The Court rejected this argument, however, reasoning that such distinctions

became so fine as to be unworkable and that Florida's restrictions left judicial

candidates other avenues of speech. *Id.* The Court emphasized that a narrowly-

tailored provision need not be "perfectly tailored," stating "most problems arise in

greater and lesser gradations, and the First Amendment does not confine a State to

addressing evils in their most acute form." *Id.* at 1671. The Ninth Circuit reached

a similar conclusion in *Woflson*, holding that while Arizona's campaign law may

prohibit a judicial candidate from supporting a presidential candidate and that such

action "may have less of an effect on the public confidence than endorsing or

campaigning for an Arizona State senator or a local prosecutor, creating a rigid

line is as unworkable as it is unhelpful." 811 F.3d at 1185. Implicit in both

decisions is the recognition of the importance of permitting the states room to

regulate their own government and its structure, as well as its accountability.

Here, Canon 4 of the Montana Code of Judicial Conduct is specifically

related to "political and campaign activities of judges and judicial candidates."

20

Montana's provisions do not prevent judicial candidates from announcing their views on disputed legal or political subjects or making truthful critical statements about judges or judicial candidates. Judicial candidates are free to express factually-based opinions and to report truthfully in commenting about an opponent, including an incumbent judge. While Rule 4.1(A)(10)'s limitation on "misleading" speech implicates vagueness concerns, *see Winter*, 2016 WL 2864418, at **19-20, the "plainly legitimate sweep" of the rule is made clear in the preface of Rule 4.1(A)(10), which limits its application to the bounds of the law. *Wolfson*, 811 F.3d at 1184. In this case, discipline would not be appropriate so long as the facts underlying the statement are true. *See Yagman*, 55 F.3d at 1438.

### 3.    Underinclusive

Myers further argues that both Canon 4.1(A)(10) and Rule 8.2(a) are underinclusive because Canon 4.1(A)(10) does not apply to statements made prior to attorneys announcing their candidacy and Rule 8.2(a) applies only to attorneys. "Underinclusivity creates a First Amendment concern when the State regulates one aspect of a problem while declining to regulate a different aspect of a problem that affects its stated interest *in a comparable way*." *Williams-Yulee*, 135 S. Ct. at 1670 (emphasis in original). The Supreme Court recognizes that a law can violate

the First Amendment by abridging "*too little* speech." *Id.* at 1668 (emphasis in original); *see also White*, 536 U.S. at 783 (holding the "announce clause" of Minnesota's Code of Judicial Conduct was not narrowly tailored because "it was woefully underinclusive, prohibiting announcements by judges (and would-be judges) only at certain times and in certain forms"). However, the Court has upheld laws the could have conceivably restricted even greater amounts of speech on the grounds that "[a] State need not address all aspects of the problem in one fell swoop; policymakers may focus on their most pressing concerns." *Williams-Yulee*, 135 S. Ct. at 1668. In doing so, the Court looked to whether the Florida provision was "aim[ed] squarely at the conduct most likely to undermine public confidence in the integrity of the judiciary," "applie[d] evenhandedly to all judges and judicial candidates, regardless of their viewpoint," and was not "riddled with exceptions." *Id.* at 1668-69; *see also Wolfson*, 811 F.3d at 1183-84. The same can be said of the rules at issue here.

First, they are aimed at conduct the State has identified as most likely to undermine public confidence in the integrity of the judiciary, i.e., false statements of lawyers, judicial candidates, and judges. Second, the rules apply to all lawyers under Rule 8.2(a) and to all judicial candidates and judges under Rule 4.1(A)(10). Finally, there are no exceptions. Similar to the situation in *Wolfson* and *Williams-*

22

*Yulee*, while Montana might have prohibited more categories of persons from making false statements in judicial races, "policymakers may focus on their most pressing concerns" and the fact that the State "'conceivably could have restricted even great amounts of speech in service of [its] stated interests' is not a death blow under strict scrutiny." *Wolfson*, 811 F.3d at 1184 (quoting *Williams-Yulee*, 135 S. Ct. at 1668).

Because Myers is unlikely to succeed on the merits of his claim, his motion is denied and the remaining *Winter* elements are not addressed. *Thalheimer*, 645 F.3d at 1115.

## CONCLUSION[2]

Accordingly, IT IS ORDERED that the parties' respective motions (Docs. 5, 13) are DENIED.

Dated this 29d day of June, 2016.

_____     15:31 PM
Donald W. Molloy, District Judge
United States District Court

---

[2] As the Court noted at the hearing in this case, the quality of the briefing and arguments in this case was refreshing.