IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ROBERT MYERS,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>MICHAEL COTTER, in his official capacity as Chief Disciplinary counsel for the State of Montana,<br><br>　　　　　　Defendant. | CV 16-45-H-DWM-JCL<br><br><br>FINDINGS &<br>RECOMMENDATION |

Attorney Robert Myers brings this action for declaratory and injunctive relief seeking a determination that certain rules of professional conduct prohibiting false statements by and about judicial candidates are unconstitutional on their face and as applied under the First and Fourteenth Amendments to the United States Constitution.  Myers has moved for partial summary judgment on his claim that these regulations are facially unconstitutional under the First Amendment, and Defendant Michael Cotter (the State) has cross-moved for summary judgment on all claims.

For the reasons set forth below, Myers' motion for partial summary judgment should be denied, the State's motion for summary judgment granted, and this matter dismissed.

1

I.  **Background**

Myers is an attorney who represented Daniel Cox in a parenting plan
dispute in the Montana Twenty-First Judicial District Court.  *Cox v. Cox*, 348 P.3d
673 (Mont. 2015) (table).  District Judge Jeffrey Langton presided over the case.
In June 2014, Judge Langton sanctioned Myers for violating Montana Rule of
Civil Procedure 11(b) in several ways, including making "unsupported legal and
factual allegations" and submitting filings "for an improper purpose" in the *Cox*
matter.  *Myers v. Twenty-First Judicial District of Mont.*, 353 P.3d 506 ¶ 4 (Mont.
2015) (table); (Doc. 50-1).  The Montana Supreme Court upheld the sanction order
on appeal, finding that "Myers' baseless factual contentions and use of
inflammatory language has no place in our legal process and, standing alone,
would justify sanctions." *Myers*, 353 P.3d 506  ¶ 11.  The Montana Supreme
Court also affirmed Judge Langton's decision resolving the parenting plan dispute.
*Cox*, 348 P.3d 541.

Several months after the Montana Supreme Court's decisions in *Myers* and
*Cox*,  Myers filed a statement of candidacy so that he could run against Judge
Langton for the position of district judge for the Montana Twenty-First Judicial
District Court in the 2016 general election.  During the course of his campaign,
Myers caused a radio advertisement to be aired that criticized Judge Langton's

conduct while presiding over the parenting plan dispute in the *Cox* matter.  The

advertisement was narrated by Dan Cox and stated:

> This is Dan Cox and I have a warning for you.  I caught Judge Jeff Langton
> committing fraud on the court.  He was secretly communicating with
> attorneys for the other party.  He denied me a chance to respond and
> prevented me from fully presenting my case.  Robert Myers was the only
> attorney who helped me stand up to this corruption.  All I was asking for
> was a new judge to determine how his conduct affected my ability to have a
> fair hearing.  Not only did Jeff Langton not allow a neutral judge to look at
> his conduct, but he stopped all witnesses including himself from being
> questioned.  He of course found himself innocent without a hearing.  No
> judge should judge his own conduct.  Shame on Jeff Langton for retaliating
> against my lawyer, and shame on Jeff Langton for not giving me and my
> children a fair hearing.  Paid for by Myers for Judge.

(Doc. 50, at 3).  The campaign advertisement was broadcast several times from

late April 2016 through late May 2016 on a radio station in Missoula.

On July 16, 2016, the Montana Office of Disciplinary Counsel ("ODC")

filed a complaint against Myers charging him with professional misconduct based

on several of the statements contained in his campaign advertisement.  (Doc. 50-

2). ODC alleged violations of Rules 8.2(a) and 8.4(c) of the Montana Rules of

Professional Conduct (Rule) and Canon 4.1(A)(10) of the Montana Code of

Judicial Conduct (Canon).

Rule 8.4(c) provides that "[i]t is professional misconduct for a lawyer to . . .

engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Rule

8.2(a) states more specifically that "[a] lawyer shall not make a statement that the

lawyer knows to be false or with reckless disregard as to its truth or falsity

concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office."  Subsection (b) of that rule further provides that "[a] lawyer who is a candidate for judicial office shall comply with the applicable provisions of the code of judicial conduct," implicating Canon 4.  Canon 4.1(A)(10) states that "[a] judge or judicial candidate shall not...knowingly or with reckless disregard for the truth, make any false or misleading statement."

In June 2016, Myers commenced this action challenging the constitutionality of Rule 8.2(a) and Canon 4.1(A)(10) and moved for a preliminary injunction to enjoin the state from enforcing the regulations. (Docs. 1, 5). Presiding United States District Court Judge Donald W. Molly denied the motion for a preliminary injunction on the ground that Myers had not established he was likely to succeed on the merits of his constitutional challenges.  (Doc. 19).

In September 2016, Myers filed a Second Amended Complaint again challenging the constitutionality of Rule 8.4(c).  (Doc. 40).  The Second Amended Complaint asserts two claims for relief, the first of which alleges that Rules 8.2(a), Rule 8.4(c), and Canon 4.1(A)(10) violate the free speech clause of the First Amendment to the United States Constitution both on their face and as applied to his campaign advertisement. (Doc. 40, ¶ 92). Myers' second claim for relief asserts that Rule 8.2(a) and Canon 4.1(A)(10) violate the equal protection clause of the

Fourteenth Amendment to the United States Constitution both on their face and as applied to his campaign advertisement.  (Doc. 40, ¶ 100).

Myers moves for partial summary judgment on his claim that Rule 8.2(a) and Canon 4.1(A)(10) are facially unconstitutional under the First Amendment. Myers does not move for summary judgment on his challenge to Rule 8.4(c).[1] Myers further makes clear that he is not seeking summary judgment on any of his as-applied challenges or on his claim that Rule 8.2(a) and Canon 4.1(A)(10) violate the equal protection clause of the Fourteenth Amendment. The State has cross-moved for summary judgment on all claims.

## II.   **Summary Judgment Standards**

Under Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).  Once the moving party has satisfied his burden, he is entitled to summary judgment if the

---

[1]Although Myers mentions Rule 8.4(c) once in the text of his motion for partial summary judgment (doc. 56-1, at 2), he does not address it in his supporting brief. (Doc. 56-2).

non-moving party fails to designate by affidavits, depositions, answers to interrogatories or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

The State filed its motion for summary judgment on May 30, 2017, and Myers' response was due 21 days later. Local Rule 7.1(d)(1)(B)(I). As of the date of these Findings and Recommendation, however, Myers has not filed a brief in response to the State's motion. Local Rule 7.1(d)(1)(B) provides that a "failure to file a response brief may be deemed an admission that the motion is well-taken." But the Ninth Circuit has made clear that a district court may not grant "summary judgment simply because a party fails to file an opposition or violates a local rule" and must "analyze the record to determine whether any disputed material fact [is] present." *Ahanchian v. Xenon Pictures,* Inc., 624 F.3d 1253, 1258 (9th Cir. 2010). *See also Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) ("a nonmoving party's failure to comply with local rules does not excuse the moving party's

affirmative duty under Rule 56 to demonstrate its entitled to judgment as a matter of law"). Notwithstanding Myers' failure to respond, the Court will thus consider whether the State has met its summary judgment burden of showing that there are no material issues of fact and that it is entitled to judgment as a matter of law.

## III.   Discussion

### A.   Facial Challenges

#### 1.   Historical Categories

Myers first argues that Rule 8.2 and Canon 4.1(A)(10) are unconstitutional because they regulate speech that does not fall within one of the historical categories exempted from First Amendment protection. It is well established that some categories of expression are exempted from First Amendment protection, such as obscenity, defamation, incitement, and fighting words. *See, e.g., United States v. Alvarez*, 638 F.3d 666, 670 n. 2 (9th Cir. 2011). Myers takes the position that Rule 8.2 and Canon 4.1(A)(10) are unconstitutional because they regulate campaign speech, which does not fall into any of the historically recognized exempt categories. For support, Myers relies entirely on one sentence from Justice Kennedy's concurrence in *Republican Party of Minn. v. White*, 536 U.S. 765 (2002). The majority in *White* applied strict scrutiny to a content-based speech prohibition for judicial candidates, but Justice Kennedy stated in his concurrence that he would go further and hold that "content-based speech restrictions that do

not fall within any traditional exception should be invalidated without inquiry into narrow tailoring or compelling government interests." *White,* 536 U.S. at 792-93.

Contrary to Myers' argument, Justice Kennedy's concurrence does not provide the controlling standard for purposes of analyzing restrictions on speech by judicial candidates.  The correct standard is set forth in *Williams Yulee v. Florida Bar*, __ U.S. __, 135 S.Ct. 1656, 1665 (2015), which applied strict scrutiny and held that "[a] State may restrict the speech of a judicial candidate only if the restriction is narrowly tailored to serve a compelling interest."  The Ninth Circuit has followed suit, holding based on *Williams-Yulee* that restrictions on judicial candidate speech are subject to strict scrutiny. *Wolfson v. Concannon*, 811 F.3d 1176, 1180-81 (9th Cir. 2016).

The regulations at issue here are thus subject to strict scrutiny.  The United States Supreme Court has recognized the "vital state interest" in safeguarding "public confidence in the fairness and integrity of the nation's elected judges." *Williams-Yulee*, 135 S. Ct. at 1666 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 889 (2006)).  States have a similar compelling interest in "maintaining confidence, and preserving the integrity of the legal profession[.]" *U.S. Dist. Court for the Eastern Dist. of Washington v. Sandlin*, 12 F.3d 861, 865 (quoting *Matter of Allotta*, 748 P.2d 628, 630-31 (1988)).  Myers does not argue otherwise.  In fact, he agrees that "States have a compelling interest in seeking to

ensure the appearance and the reality of an impartial judiciary." (Doc. 56-2, at

14). Myers instead argues that Rule 8.2(a) and Canon 4.1(A)(10) are not narrowly

tailored to serve that compelling interest.

2.    Narrowly Tailored

"A narrowly tailored regulation is one that actually advances the state's

interest (is necessary), does not sweep too broadly (is not overinclusive), does not

leave significant influences bearing on the interest unregulated (is not

underinclusive), and could be replaced by no other regulation that could advance

the interest as well with less infringement of speech (is the least restrictive

alternative)." *Republican Party of Minn. v. White*, 416 F.3d 783, 751 (8th Cir.

2005).

With respect to the first component, "[t]he First Amendment requires that

the Government's chosen restriction on the speech at issue be 'actually necessary'

to achieve its interest." *United States v. Alvarez*, __ U.S. __, 132 S.Ct. 2537, 2549

(2012). To show that a regulation is necessary, "[t]here must be a direct causal

link between the restriction imposed and the injury to be prevented." *Alvarez*, 132

S.Ct. at 2549.

Rule 8.2(a) and Canon 4.1(A)(10) are actually necessary to achieve the

State's compelling interest in ensuring public confidence in the integrity of the

judiciary. Rule 8.2(a) prohibits a lawyer from knowingly or recklessly making

false statements about the qualifications or integrity of a judge or judicial

candidate.  The Ninth Circuit has held that the State of Washington's equivalent to

Rule 8.2(a) promotes public confidence in the fairness and integrity of elected

judges and maintains public confidence in the judicial system.  *Sandlin*, 12 F.3d at

867.  Canon 4.1(A)(10), in turn, prohibits a judge or judicial candidate from

knowingly or recklessly making any false or misleading statement.  The Sixth

Circuit has held that an identical version of Canon 4.1(A)(10) is constitutional on

its face, noting that "[t]he narrowest way to keep judges honest during their

campaigns is to prohibit them from consciously making false statements about

matters material to the campaign." *Winter v. Wolnitzek*, 834 F.3d 681, 693 (6th Cir.

2016).  The court found that Canon 4.1(A)(10) clearly serves that interest.  *Winter*,

834 F.3d 693.  Consistent with *Sandlin* and *Winter*, Judge Molloy found in his

order denying Myers' motion for a preliminary injunction that Rules 8.2(a) and

Canon 4.1(A)(10) effectively target conduct the State believes most likely to erode

the public's confidence in the integrity of the judiciary: "false and misleading

statements by those entrusted by the States to carry out the law, the lawyers,

judicial candidates, and judges."  (Doc. 19, at 17).  Rules 8.2(a) and Canon

4.1(A)(10) are thus necessary to achieve the State's compelling interest.

Rule 8.4(c) is likewise necessary to achieve the State's compelling interest

in preserving the integrity of the legal profession.  Rule 8.4(c) provides that "[i]t is

professional misconduct for a lawyer to...engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."  The rule thus prohibits four specific categories of conduct that are likely to cause injury to the public's confidence in the integrity of the legal profession and is sufficiently necessary to achieve the State's compelling interest.

With respect to underinclusivity, Judge Molloy concluded in his order denying Myers' motion for a preliminary injunction that Rule 8.2(a) and Canon 4.1(A)(10) do not leave significant influences bearing on the State's interest unregulated because they are aimed at conduct the State has identified as most likely to undermine public confidence in the integrity of the judiciary, they apply to all lawyers under Rule 8.2(a) and to all judicial candidates under Canon 4.1(A)(10), and there are no exceptions.  (Doc. 19, at 22).  The same can be said of Rule 8.4(c), which is similarly aimed at conduct the State has identified as most likely to undermine public confidence in the integrity of the legal profession, applies to all lawyers, and does not contain any exceptions.

Myers does not argue otherwise on summary judgment.  Myers instead argues that Rule 8.2(a) and Canon 4.1(A)(10) are not narrowly tailored because they are not the least restrictive means of achieving the State's compelling interest, and are overbroad or overinclusive.

a.    *Least Restrictive Alternative*

For a regulation of speech to be narrowly tailored, it "must be the least restrictive means of achieving a compelling state interest." *McCullen v. Coakely*, _ U.S. _, 134 S.Ct. 2518, 2530 (2014).  Myers maintains that counterspeech is a less restrictive alternative to Rule 8.2(a) and Canon 4.1(A)(10).[2]  As he did in support of his motion for a preliminary injunction, Myers relies on the Supreme Court's decision in *Alvarez*, which addressed counterspeech in the context of a First Amendment challenge to the Stolen Valor Act.  *Alvarez* recognized that "[t]he remedy for speech that is false is speech that is true.  This is the ordinary course in a free society.  The response to the unreasoned is the rational; to the uninformed, the enlightened; to the straightout lie, the simple truth." *Alvarez*, 132 S.Ct. at 2550.  Courts have applied these principles in the context of political campaigns, indicating that counterspeech is an effective remedy for alleged false speech in political elections.  *See, e.g., Brown v. Hartlage*, 456 U.S. 45, 61 (1982); *281 Care Committee v. Arneson*, 766 F.3d 774, 793 (8th Cir. 2014) ("Especially as to political speech, counterspeech is the tried and true buffer and elixir."); *Butler v. Alabama Judicial Inquiry Comm'n*, 111 F.Supp.2d 1224, 1235 (M.D. Ala. 2000).

---

[2] Myers does not argue that counterspeech is a less restrictive alternative to Rule 8.4(c).

Myers analogizes judicial races to political campaigns and argues that counterspeech is a less restrictive alternative to Rule 8.2(a) and Canon 4.1(A)(10). But the Supreme Court rejected this analogy in *Williams-Yulee*, pointing out that "a State's interest in preserving public confidence in the integrity of the judiciary extends beyond its interest in preventing the appearance of corruption in legislative and executive elections." *William-Yulee*, 135 S.Ct. at 1667. This means that "States may regulate judicial elections differently than they regulate political elections" and Supreme Court "precedents applying the First Amendment to political elections have very little bearing on the issues" involved in judicial elections. *Williams-Yulee*, 135 S.Ct. at 1667.

Judge Molloy reached the same conclusion in his order denying Myers' motion for a preliminary injunction, noting that while "counterspeech may be a strong alternative in the political election context," it "does not work to enhance the compelling State interest in judicial elections at issue here." (Doc. 19, at 18). Counterspeech does not address the harm done to the public's confidence in the integrity of the judicial system as a whole at the time the false statements are made, which means it is not an effective means to achieve the State's compelling interest. (Doc. 19, at 18-19). Because counterspeech fails to achieve the State's compelling interest in preserving the public's confidence in the integrity of the judiciary, it is not a less restrictive alternative to Rule 8.2(a) and Canon

4.1(A)(10).

    b.   *Overbreadth*

A regulation of speech "is overbroad – and therefore facially invalid – if it punishes a substantial amount of protected speech, judged in relation to the regulation's plainly legitimate sweep." *Occupy Sacramento v. City of Sacramento*, 2011 WL 5374748 *7 (E.D. Cal. Nov. 4, 2011) (citing *Virginia v. Hicks*, 539 U.S. 113 (2003)).

Myers argues that Rule 8.2 and Canon 4.1(A)(10) are overbroad, or overinclusive, because they apply to attorneys and judicial candidates in any setting, both in and out of the courtroom.[3]  Myers contends that attorney and judicial candidate speech is protected even when it is critical of a judge or judicial decision, so long as the speech does not prejudice the administration of justice in an existing legal proceeding.  For support, Myers relies on cases standing for the proposition that "[n]o judge, and no court, high or low, is beyond the reach of public and individual criticism," *In re Pryor*, 18 Kan. 72, 76 (1877), and "every citizen has the unrestricted right to comment upon and criticize" court rulings once litigation has concluded."  *State Bd. of Examiners in Law v. Hart*, 116 N.W. 212, 216 (Minn. 1908).  Citing these and similar cases, Myers takes the position that Rule 8.2(a) and 4.1(A)(10) are unconstitutionally overbroad because they regulate

---

[3] Myers does not argue that Rule 8.4(c) is overbroad.

speech that is otherwise protected, as well as speech that can be legitimately regulated to prevent prejudicing the administration of justice.

The Ninth Circuit has rejected the threshold distinction Myers attempts to draw between in- and out-of-court statements, however, recognizing that a state's compelling interest in preserving the public's confidence in the integrity of the judiciary applies in both settings. *Sandlin*, 12 F.3d at 867 (finding out-of-court statement that judge tampered with evidence actionable); *Standing Committee on Discipline of the United States District Court for the Central District of California v. Yagman*, 55 F.3d 1430, 1437-38 (9th Cir. 1995 (finding out-of-court statement that a judge was "drunk on the bench" actionable). The Ninth Circuit and the United States Supreme Court have both upheld disciplinary rules applying to speech outside the courtroom. *Williams-Yulee*, 135 S.Ct. at 1665 (upholding prohibition on judicial candidates personally soliciting funds); *Wolfson*, 811 F.3d at (upholding restrictions on campaign speech prohibiting personal solicitations, endorsements of others, campaigning for other candidates or political organizations, and making speeches on behalf of other candidates).

Myers' argument that speech is protected even when it is critical of a judge or judicial decision is similarly misplaced, and the cases he cites are inapposite. Rule 8.2(a) and Canon 4.1(A)(10) do not target hyperbole, pure opinions, or true

statements.[4]  *Yagman*, 55 F.3d at 1437-38.  In Judge Molloy's words, "Montana's

provisions do not prevent judicial candidates from announcing their views on

disputed legal or political subjects or making truthful critical statements about

judges or judicial candidates.  Judicial candidates are free to express factually-

based opinions and to report truthfully in commenting about an opponent,

including an incumbent judge."  (Doc. 19, at 21).

Myers also cites *In re Justices of the Appellate Division*, 301 N.E.2d 426

(N.Y. 1973), for the proposition that out-of-court statements by attorneys are

protected and cannot be subject to discipline.  What that court actually held,

however, was that the out-of-court statements at issue were essentially

"hyperbole" and could not provide a basis for sanctions.  *In re Justices*, 301

N.E.2d at 427.  "Without more, isolated instances of disrespect for the law, Judges

and courts expressed by vulgar and insulting words or other incivility, uttered,

written, or committed outside the precincts of a court are not subject to

professional discipline."  *Id*.  This is consistent with *Yagman,* which distinguishes

between hyperbole and verifiable statements.  "[S]tatements impugning the

integrity of a judge may not be punished unless they are capable of being proved

---

[4] Although Myers does not argue that Rule 8.4(c) is overbroad, it is worth
noting that the rule is similarly limited in that it targets conduct by an attorney
"involving dishonesty, fraud, deceit or misrepresentation."

true or false." *Yagman*, 55 F.3d at 1438.  Because "false statements impugning the integrity of a judge erode public confidence," they are subject to discipline. Myers' argument that Rule 8.2(a) and Canon 4.1(A)(10) are unconstitutionally overbroad because they apply equally to in- and out-of-court statements and regulate otherwise protected speech thus fails as a matter of law.

Myers also argues Canon 4.1(A)(1) is overbroad because it applies without regard to subject matter, including speech that could not possibly impact the public's perception of the judiciary.  Judge Molloy has already rejected this argument.  (Doc. 19, at 21).  Whether a regulation is overbroad must be "judged in relation to [its] plainly legitimate sweep."  *Wolfson*, 811 F.3d at 1184 (quoting *Wash. St. Grange v. Wash. St. Republican Party*, 552 U.S. 442, 449 n.6 (2008)). Canon 4.1(A)(1) specifically addresses "political and campaign activities of judges and judicial candidates."  Its "plainly legitimate sweep" is to ensure that judges and judicial candidates remain free from undue influence and political pressure.

For the reasons set forth above, the Court concludes that Rule 8.2(a), Rule 8.4(c), and Canon 4.1(A)(10) all promote compelling state interests in maintaining public confidence in the integrity of the judiciary and the legal profession and are narrowly tailored to serve those interests.  Because all three rules are narrowly tailored to serve a compelling state interest, the State is entitled to summary

17

judgment on Myers' facial challenges.[5]

## B.    As-Applied Challenges

In first claim for relief, Myers further alleges that Rules 8.2(a), Rule 8.4(c), and Canon 4.1(A)(10) violate the First Amendment as applied to his campaign advertisement. (Doc. 40, ¶ 92).

When it comes to statements critical of the judiciary, the Ninth Circuit recognizes that rhetorical hyperbole, true statements, and opinions that do not imply a false assertion of fact are protected by the First Amendment. *Yagman*, 55 F.3d at 1438. Unlike these categories of protected speech, however, "*false* statements impugning the integrity of a judge erode public confidence without serving to publicize problems that justifiably deserve attention." *Yagman*, 55 F.3d at 1437-38. *Yagman* makes clear that "statements impugning the integrity of a judge may not be punished unless they are capable of being proved true or false." *Yagman*, 55 F.3d at 1438. To determine whether a statement can be proved true or false, a court considers whether the speaker's words have "specific, well-defined meanings and describe objectively verifiable matters." *Yagman*, 55 F.3d at 1438.

---

[5] The Court need not, and does not, consider Myers' argument that the State of Montana should use a subjective rather than an objective standard for purposes of evaluating alleged violations of Rule 8.2(a) and Canon 4.1(A)(10). Myers' challenge is based upon the First Amendment to the United States Constitution. Whether the State of Montana should employ a subjective or objective standard presents an issue of State law that does not bear upon the Court's analysis of the federal question presented here.

Where an opinion is "based on implied, undisclosed facts" and the speaker has no "factual basis for his assertion, the statement is actionable, even though phrased in terms of the author's personal belief." *Yagman*, 55 F.3d at 1439.

The State maintains it is entitled to summary judgment on Myers' as-applied challenge because the statements in his radio advertisement are not constitutionally protected as pure opinion or hyperbole.  According to the State, the advertisement is instead made up of objectively verifiable statements which have been rejected by the Montana Supreme Court as baseless and unfounded.

As the State accurately breaks it down, Myers' campaign advertisement contained the following substantive statements about Judge Langton:

> (1) Judge Langton "was secretly communicating with attorneys for the other party."
>
> (2) Judge Langton denied Dan Cox due process in *Cox v. Cox* because "[h]e denied me the chance to respond and prevented me from fully presenting my case."
>
> (3)  Judge Langton did not "allow a neutral judge to look at his conduct."
>
> (4)  Judge Langton retaliated against Myers.
>
> (5)  Judge Langton was caught "committing fraud on the court."
>
> (Doc. 50, at 3).

All of these statements are capable of being proved true or false and have been rejected by the Montana Supreme Court.

1.   Ex parte contact

Myers' statement that Judge Langton "was secretly communicating with attorneys for other party" is an allegation of fact and cannot be characterized as pure opinion or rhetorical hyperbole.  (Doc. 50, at 3).  Myers claimed on behalf of Cox in the parenting plan proceedings that Judge Langton had engaged in improper ex parte communications.  (Doc. 50-1, at 17).  On appeal, the Montana Supreme Court rejected the claim as "unfounded."  On appeal, the Montana Supreme Court found the claim that Judge Langton had improper ex parte communications with Cox and his ex-wife's attorneys was "unfounded." *Cox*, 348 P.3d ¶ 16.  Because Myers' statement that Judge Langton was secretly communicating with the attorney for the other party is capable of being proved true or false, and was rejected by the Montana Supreme Court as unfounded, it is actionable for disciplinary purposes.  Myers has not come forward with any evidence or argument in response to the State's summary judgment motion to show that the statement was indeed true.   Myers' claim that the disciplinary rules are unconstitutional as applied to this statement thus fails as a matter of law.

2.   Due process

Myers' statement that Judge Langton denied his client "the chance to respond and prevented [his client] from fully presenting [his] case" is an allegation

20

of fact and cannot be considered pure opinion or hyperbole. (Doc. 50, at 3).  The

Montana Supreme Court rejected the claim that Myers' client had been denied due

process, finding that Cox "was afforded both notice and right to be heard in all

aspects of the proceedings, which meet the requirements of civil due process."

*Myers*, 353 P.3d 506  ¶ 10.  Because Myers' statement that Judge Langton denied

his client the chance to respond and fully present his case is capable of being

proved true or false, and was rejected by the Montana Supreme Court on the

merits, it is actionable for disciplinary purposes.  Myers has not come forward

with any evidence or argument in response to the State's summary judgment

motion to show that the statement was actually true.  Myers' claim that the

disciplinary rules are unconstitutional as applied to this statement thus fails as a

matter of law.

        3. <u>Neutral judge</u>

     Myers' statement that Judge Langton did not "allow a neutral judge to look

at his conduct" is also an allegation of fact and does not constitute pure opinion or

hyperbole.  (Doc. 50, at 3). On behalf of his client in the parenting plan

proceedings, Myers sought to remove Judge Langton from the case for several

reasons, including the fact that he "would have to rule on the propriety of his own

conduct."  *Cox*, 348 P.3d 673 ¶ 6.  On appeal, the Montana Supreme Court

rejected the claim that "Judge Langton impermissibly presided over a trial involving his own actions and was a material witness." *Cox*, 348 P.3d 673 ¶ 14. To the extent the statement that Judge Langton did not allow a neutral judge to review his conduct could be considered an opinion, it implies undisclosed facts, namely, that no neutral judge ever reviewed Judge Langton's conduct. But the Montana Supreme Court did in fact review Judge Langton's conduct and found it was proper.

Because Myers' statement that Judge Langton did not allow a neutral judge to review his own conduct is capable of being proved true or false and was rejected by the Montana Supreme Court on the merits, it is actionable for disciplinary purposes. Myers has not come forward with any evidence or argument in response to the State's summary judgment motion to show that the statement was actually true. Myers' claim that the disciplinary rules are unconstitutional as applied to this statement thus fails as a matter of law.

4.   Retaliation

Myers' radio advertisement contained the following statement, read by Cox: "Shame on Judge Langton for retaliating against my lawyer." (Doc. 50, at 3). This too is an allegation of fact and is not pure opinion or rhetorical hyperbole. To the extent the statement that Judge Langton's conduct was shameful can be

22

considered an opinion, it is implies undisclosed facts, namely, that Judge Langton retaliated against Myers.

The record reflects that Judge Langton sanctioned Myers for his conduct in the *Cox* case, and the Montana Supreme Court affirmed. (Doc. 50-1); *Myers,* 353 P.3d 506 ¶ 14.  Because the Court upheld the order imposing sanctions, Judge Langton's conduct in imposing those sanctions was fair and proper, not retaliatory.

Because Myers' statement that Judge Langton retaliated against him is capable of being proved true or false, and was effectively rejected by the Montana Supreme Court on the merits, it is actionable for disciplinary purposes.  Myers has not come forward with any evidence or argument in response to the State's summary judgment motion to show that the statement was actually true.  Myers' claim that the disciplinary rules are unconstitutional as applied to this statement thus fails as a matter of law.

5.     Fraud on the court

Myers' advertisement stated that Cox "caught Judge Jeff Langton committing fraud on the court." (Doc. 50-3).  This statement describes objectively verifiable matters, and is not a pure opinion or rhetorical hyperbole.

 While representing Cox in the parenting plan dispute in state court, Myers asserted that Judge Langton had committed "fraud on the Court."  (Doc. 50-4). The Montana Supreme Court rejected all of Myers' claims on appeal, including his

fraud claim.  *Myers*, 353 P.3d 506; *Cox*, 348 P.3d 673.

Because Myers' statement that Judge Langton committed fraud on the court is capable of being proved true or false, and was rejected by the Montana Supreme Court on the merits, it is actionable for disciplinary purposes.  Myers has not come forward with any evidence or argument in response to the State's summary judgment motion to show that the statement was actually true.  Myers' claim that the disciplinary rules are unconstitutional as applied to this statement thus fails as a matter of law.

ODC charged Myers with misconduct based on these statements, all of which are capable of being proved true or false.  Before Myers made the statements in his campaign advertisement, the Montana Supreme Court had rejected them as unfounded or without merit.   Because the statements for which Myers faces discipline are demonstrably false in light of the Montana Supreme Court's decisions in *Cox* and *Myers*, Rule 8.2(a), Rule 8.4(c), and Canon 4.1(A)(10) survive Myers' First Amendment as-applied challenge, and the State is entitled to summary judgment on these claims.

### C.    Equal Protection Challenges

Myers' second claim for relief asserts that Rule 8.2(a) and Canon 4.1(A)(10) violate the equal protection clause of the Fourteenth Amendment both on their face and as applied to his campaign advertisement.  (Doc. 40, ¶ 100).  Myers

alleges the rules are unconstitutional because "attorneys in Montana are not permitted to engage in certain forms of campaign speech involving judicial candidates, but non-attorneys are permitted to engage in such speech without fear of penalty." (Doc. 40, ¶ 99).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).   "A facial challenge attacks a statute that 'on its face classifies persons for different treatment,' while an as-applied challenge relates to a law that 'may be applied in a manner that creates a classification, although it appears neutral on its face.'" *Peterson v. Farrow*, 2016 WL 3477238 *2 (E.D. Cal. June 27, 2016) (quoting *United States v. Pitts*, 908 F.2d 458, 459 (9th Cir. 1990)).   To prevail on either type of challenge, a plaintiff must "identify a 'similarly situated' class against which the plaintiff's class can be compared." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) (citing *Attorney General v. Irish People, Inc.*, 684 F.2d 928, 946 (D.C. Cir. 1982)).

The State argues it is entitled to summary judgment on Myers' equal protection claims because attorneys and non-attorneys are not similarly situated, particularly when it comes to making false statements about judges or judicial

candidates.  The Ninth Circuit recognizes that lawyers are officers of the court and "do not stand in the shoes of ordinary citizens." *U.S. Dist. Court for Eastern Dist. of Washington v. Sandlin*, 12 F.3d 861, 865 (9th Cir. 1993) (quoting *Matter of Westfall*, 808 S.W.2d 829, 836 (Mo. 1991)).  Although an attorney "does not surrender his freedom of expression" once admitted to the bar, "he must temper his criticisms in accordance with professional standards of conduct." *Sandlin*, 12 F.3d at 866.

*Sandlin* supports the State's argument that lawyers and non-lawyers are not similarly situated particularly when it comes to criticizing judges and the judiciary. Myers does not offer any argument or authority to the contrary.  Because Myers has not established that Rule 8.2(a) and Canon 4.1(A)(10) single out two similarly situated classes for different treatment, either on their face or as applied, his equal protection claims fail as a matter of law.

## IV.  <u>Conclusion</u>

For the reasons set forth above,

IT IS RECOMMENDED that Plaintiff's motion for partial summary judgment be DENIED, the State's motion for summary judgment be GRANTED, and this case be DISMISSED.

Because a bench trial is set to begin in this matter on September 25, 2017, the parties are advised that, pursuant to 28 U.S.C. § 636, any objections to these

findings and recommendation must be filed on or before September 11, 2017.

Any response to those objections must be filed on or before September 15, 2017.

*See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (the court need not

give the parties the full statutory period set forth in 28 U.S.C. § 636(b)(1) within

which to file objections).

DATED this 30th day of August, 2017.

Jeremiah C. Lynch
United States Magistrate Judge